IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JESSIE EADES,                          )
                                       )
                Plaintiff,             )
                                       )
vs.                                    )          Case No. 08-CV-755-TLW
                                       )
MICHAEL J. ASTRUE, Commissioner,       )
Social Security Administration,        )
                                       )
                Defendant.             )

## OPINION AND ORDER

Plaintiff Jessie Eades appeals the final decision of the Social Security Commissioner denying her benefits under Title II (Disability Insurance)[1] and Title XVI (Supplemental Security Income)[2] of the Social Security Act.  Plaintiff has appealed, and both parties have consented to this matter being heard by a United States Magistrate Judge.  (Dkt. # 9).  The Court reviews this matter pursuant to 42 U.S.C. § 405(g) (Title II) and 42 U.S.C. § 1383(c) (Title XVI).[3]

## Background

Plaintiff was born on July 13, 1959 and was 46 years old when she submitted her application for disability benefits on February 3, 2006.  (R. 96).  She claims her disability began on June 1, 2004, when she was 44.  (R. 96).  She has a 10th grade education.  (R. 152).  Plaintiff's work history consists of a variety of activities including cleaning floors, working a sales counter, selling memberships, driving trucks, sorting clothes, and working at shipping and

---

[1]  20 C.F.R. §§ 404.1501-404.1599.

[2]  20 C.F.R. §§ 416.901-416.974.

[3]  The plaintiff received the final decision of the Commissioner on October 29, 2008 and filed this appeal on December 17, 2008, thereby meeting the 60 day statute of limitations.  20 C.F.R. § 405(g).

receiving.  (R. 155).  A vocational expert classified these various functions as ranging from sedentary vocations to medium, semi-skilled vocations.  (R. 48).

Plaintiff originally claimed she was disabled due to kidney disease, an enlarged heart, osteoporosis, spots on her lungs, and hives caused by chemical poisoning.  (R. 123).  She alleged that certain symptoms related to these conditions prevented her from working, because they hindered her breathing and caused severe leg and back pain.  (R. 124).  She further alleged the conditions led to her missing work and being fired.  (R. 124).  The plaintiff describes her daily activities as composed of a variety of household activities.  (R. 129).  She watches television, does the laundry, and takes family members to their doctor appointments.  (R. 129).  She stated that she could not lift her arms over her head to wash her hair and that she is kept awake by the pain from her hives, racing thoughts, and having to go to the bathroom.  (R. 45, 130).  She describes memory loss and trouble focusing.  (R. 134).  Plaintiff also reported having twice injured her hand, but she did not file for disability based on this injury.  (R. 111).

After applying for disability, plaintiff began receiving treatment for depression at Family and Children Services ("FCS").  (R. 18).  Mavie Busboom, BS, CM, of FCS completed a Mental Residual Functional Capacity Assessment noting a number of marked and severe limitations.  (R. 515-18).  Plaintiff also underwent a Psychiatric Review Technique conducted by Dr. Laura Lochner.  (R. 318-31).  Dr. Lochner reported mild depression related limitations but no marked or severe limitations.  (R. 318-31).  At the administrative hearing, the vocational expert, in response to a question posed by plaintiff's counsel, confirmed that if the limitations found by Ms. Busboom were true, the limitations would prevent plaintiff from holding any meaningful employment.  (R. 52).

The plaintiff was in a motor vehicle accident in December, 2006.  (R. 520).  After the accident, she sought treatment from Dr. Gary Lee.  (R. 520-30, 534-38).  Dr. Lee recommended that plaintiff be limited to no overhead work and no repetitive motion activities and that she not lift more than 20 pounds.  (R. 535).  Plaintiff was also examined by Dr. Carmen Bird who suggested similar lifting limitations and certain time constraints but did not identify any other restrictions.  (R. 292-99).

The Commissioner denied plaintiff's initial application and again denied it upon reconsideration.  (R. 65-69, 71-76).  The plaintiff exercised her right to an administrative hearing before an administrative law judge ("ALJ"), which was held on August 27, 2007.  (R. 77, 83). The ALJ issued his decision denying benefits on November 28, 2007, after which the Commissioner denied a review.  (R. 10-24, 1-4).  The plaintiff now seeks review of the Commissioner's final decision.  (Dkt. # 2).

The ALJ followed the required five step analysis in determining whether plaintiff was disabled.  (R. 15).  At step one, the ALJ found that plaintiff had engaged in no substantial gainful activity since June 1, 2004, her alleged onset date.  (R. 16).  At step two, he found plaintiff had four severe impairments.  (R. 16).  The ALJ found that plaintiff had "osteoarthritis, status post crush injury to her right hand . . . renal disease and obesity."  (R. 16).  At step two, the ALJ also found that plaintiff was only minimally impaired by her depression and that her hives did not severely impair her.  (R. 18).  Having found these impairments, the ALJ found at step three that no impairment or combination of impairments met a listed impairment.  (R. 19).  Before proceeding to step four, the ALJ determined plaintiff's residual functional capacity ("RFC").  (R. 19-20).  He found that plaintiff had the RFC "to lift and/or carry 10 pounds occasionally and 10

pounds frequently; stand and/or walk at least 2 hours in an 8-hour work day and sit at least 6 hours in an 8-hour workday."   (R. 19).   The ALJ then found that plaintiff's RFC was for sedentary work only, and she would not be able to perform her past relevant work, which was light and medium unskilled and semi-skilled work.  (R. 22).   Accordingly, he proceeded to step five to determine whether, given plaintiff's age, education, vocational profile, and RFC, there were significant jobs she might perform in the national economy.  (R. 23).   Because he found plaintiff was able to perform the full range of sedentary jobs, the ALJ applied the Medical-Vocational Guidelines ("grids") and found that she was not disabled.  (R. 23).

## Issues Raised

The plaintiff has raised three issues on appeal.  First, plaintiff alleges that the ALJ did not perform a proper credibility analysis of the plaintiff's testimony.  Next, plaintiff argues the ALJ improperly evaluated the medical opinion evidence.  Finally, plaintiff contends the ALJ erred at step five of the sequential evaluation process by improperly resorting to the grids and not including plaintiff's limitations in his questions to the vocational expert.

## Discussion

A disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   20 C.F.R. §§ 404.1505(a), 416.905(a).   The Commissioner determines whether a plaintiff is disabled by utilizing a five step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; see also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).[4]  Initially, a plaintiff bears

---

[4]  The five-step sequence is as follows.  In step one the plaintiff must show she is gainfully employed.   Step two requires the plaintiff to demonstrate she has medically determinable

the burden of establishing a prima facie case of disability in steps one through four.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  A plaintiff may successfully meet this burden by demonstrating through medical evidence that she has an impairment that affects her ability to sustain work of the type she has performed in the past.  20 C.F.R. §§ 404.1512, 416.912.  If a plaintiff is successful in making this demonstration, the burden shifts to the Commissioner in step five to show that despite plaintiff's impairments, there are jobs in the national economy which plaintiff is capable of performing.  Nielson, 992 F.2d at 1120.

The Court's role in reviewing this administrative determination is limited to considering whether the Commissioner based his decision on substantial evidence and applied the correct legal standards.  Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005), see also 42 U.S.C. § 405(g).  Substantial evidence is evidence which is more than a scintilla, but less than a preponderance, and is generally of the nature that a reasonable mind would see it as supporting a particular conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  This Court will neither reweigh the evidence nor will it substitute its own judgment for that of the Commissioner.  Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).  Instead, it will only review the Commissioner's decision to ensure that the ALJ weighed and discussed the evidence and clearly explained any reason behind an unfavorable decision.  42 U.S.C. § 405(b)(1).

---

impairments and that those impairments are severe.  In step three, the plaintiff is required to demonstrate whether her impairments are the equivalent to a listed impairment.  If they are, she is disabled.  If not, then the Commissioner must make an administrative finding of the plaintiff's residual functional capacity ("RFC").  Once complete, the plaintiff must demonstrate that, based on her residual functional capacity, she cannot return to her past relevant work. If she cannot demonstrate this, she is not disabled.  If she does however, then at step five, the Commissioner must show that there is substantial gainful activity within the national economy which the plaintiff can perform.  See Williams v. Bowen, 844 F.2d at 750-52.

Plaintiff contends the ALJ erred by improperly discrediting plaintiff's testimony regarding her pain.  After steps one through three, but before step four, the ALJ must determine plaintiff's residual functional capacity ("RFC"); that is, her ability to perform work "on a regular and continuing basis."  Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).  This assessment must account for all of plaintiff's exertional and non-exertional limitations.  Winfrey, 92 F.3d at 1024; see also SSR 96-8p.  In assessing the extent to which plaintiff's alleged symptoms limit her ability to perform gainful activity, the ALJ will first ask whether there is objective medical evidence of an impairment which could reasonably produce her symptoms.  Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987).  If the ALJ finds there is such a relationship, he is then to consider both objective and subjective evidence regarding the severity and disabling effects of the pain.  Id.  This latter step includes an analysis of certain factors which aide the inquiry into the claimant's credibility.  Id.; see also SSR 96-7p.[5]

Plaintiff asserts that in making the ALJ's credibility determination, the ALJ only referenced the pertinent legal factors and "spent little time discussing them" before passing his conclusions off as findings.  (Dkt. # 16 at 7, 9).  It is true that the ALJ should demonstrate that his findings are based on substantial evidence rather than merely passing his conclusions off as findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  However, it is also true that the ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence" so long

---

[5]   These factors include "1. [t]he individual's daily activities; 2. [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."  SSR 96-7p.

as he identifies which specific evidence he used to analyze plaintiff's credibility.  <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ acknowledged plaintiff's testimony that her feet would swell so much that she had to elevate them and that she had a difficult time sleeping through the night.  (R. 21).  He also noted the time she had to take off work to go to the doctor and her trouble going to the bathroom.  <u>Id.</u>  However, the ALJ also noted that plaintiff watched television and played computer games for at least twelve hours per day, in addition to driving her mother and brother to the doctor.  <u>Id.</u>  These observations demonstrate that the ALJ considered plaintiff's daily activities, the functional limitations and restrictions of her pain, and the measures she used to relieve her pain.  <u>See</u> SSR 96-7p (identifying a variety of factors an ALJ should use in analyzing a claimant's credibility including, but not limited to "the individual's daily activities . . . measures other than treatment the claimant uses or has used to relieve pain . . . and . . . other factors concerning the claimant's functional limitations and restrictions due to pain.").  Thus, the Court cannot find that the ALJ's credibility assessment was in error.

In addition to plaintiff's credibility arguments, she also alleges the ALJ erred in evaluating the medical opinion evidence of her treating psychiatrist and treating physician.  (Dkt. # 16 at 4).  The Court agrees with plaintiff as to the ALJ's consideration of her treating physician, but affirms the ALJ's consideration of plaintiff's treating psychiatrist.  In evaluating medical opinion evidence, the opinions of treating sources are generally entitled to controlling weight.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is not required to give treating sources controlling weight where the opinion is inconsistent with the substantial evidence of record or is not supported by acceptable clinical findings.  <u>Watkins v. Barnhart</u>, 350

F.3d 1297, 1300 (10th Cir. 2003).  In regard to the psychiatric opinion evidence, plaintiff argues that the ALJ did not explain his reasons for declining to give Ms. Busboom's opinion controlling weight.  (Dkt. # 16 at 5).  Plaintiff correctly notes that the ALJ did not explain how the processes used in preparing Ms. Busboom's assessment were not supported by medically acceptable techniques.  However, the ALJ did not decline to give Ms. Busboom's opinion controlling weight on these grounds.  Instead, the ALJ found that Ms. Busboom's opinion should not be given controlling weight because it was not consistent with the substantial evidence in the record.  (R. 22).  The ALJ cited the record as establishing that plaintiff was able to control her mood and anxiety when on her medication.  (R. 18).  Plaintiff reported being able to drive and take care of family members as well as shop and manage her finances.  Id.  The ALJ found this evidence to be inconsistent with Ms. Busboom's opinion that plaintiff was severely impaired and, therefore, did not give her opinion controlling weight.  (R. 22).  To the extent plaintiff argues that the ALJ did not give any consideration at all to Ms. Busboom's opinion, and that he should have, plaintiff ignores the fact that the conflicting evidence cited above was taken from the Family and Children's services treatment records.  (R. 397).

Plaintiff next argues that the ALJ did not properly weigh Ms. Busboom's assessment according to the appropriate legal factors.[6]  The Court rejects this argument as well.  As demonstrated above, the ALJ specifically identified the inconsistencies between Ms. Busboom's

---

[6]   Those factors are "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion."  Goatcher v. U.S. Dept. of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.1527(d)(2)-(6)).

opinion and the record.  On the other hand, the ALJ found that Dr. Lochner's opinion was consistent with the entire record.  Therefore, in making his decision to credit Dr. Lochner's opinion rather than Ms. Busboom's assessment, the ALJ explicitly considered the degree to which relevant evidence supported each opinion and each opinion's consistency with the record as a whole.  Accordingly, substantial evidence existed for the ALJ to conclude that plaintiff's depression would not interfere with her ability to perform the full range of sedentary work.  (R. 18).

While the Court does not agree with plaintiff's arguments concerning the psychiatric medical opinion, it does agree with plaintiff's contention that the ALJ failed to weigh Dr. Lee's opinion according to the proper standards.  First, the ALJ never identifies Dr. Lee's opinion as that of a treating or examining physician.  Without knowing the status of Dr. Lee, it is impossible to know whether his opinion should have been afforded controlling weight or simply considered as opinion evidence.  This distinction is important to the extent that Dr. Lee suggested that plaintiff be given certain work restrictions, including "no overhead work" and "no repetitive motion activities" with her upper extremities, and no lifting over 20 pounds.  (R. 535).  The ALJ found that plaintiff could lift "no more than 10 pounds occasionally and 10 pounds frequently; stand and/or walk at least 2 hours in an 8-hour work day and sit at least 6 hours in a an 8-hour workday."   (R. 19).   This assessment is within the lifting tolerances Dr. Lee suggested. Nonetheless, the ALJ's assessment fails to consider the additional limitations on overhead work and repetitive motion recommended by Dr. Lee.  Thus, if Dr. Lee's opinion were entitled to the controlling weight of a treating physician, then the ALJ's omission of these limitations was in conflict with the evidence.

Thus, because the ALJ did not apply the correct legal standards with respect to Dr. Lee, it is necessary to remand this matter for further proceedings consistent with this ruling.[7]

## Conclusion

ACCORDINGLY, IT IS THE ORDER OF THE COURT that this case is hereby REVERSED and REMANDED to the Commissioner of Social Security for additional proceedings consistent with this Order and Opinion.

IT IS SO ORDERED this 7th day of July, 2010.


_____
T. Lane Wilson
United States Magistrate Judge

---

[7]  Because the Court is remanding this matter, it is not necessary to consider plaintiff's step five complaint.  However, it should be noted that, in the context of her step five complaint, plaintiff alleges the ALJ did not make specific findings regarding any limitations caused by the pain from her arthritis and that such limitations precluded his use of the grids.  (Dkt. # 16 at 2-3)  In the same step five context, plaintiff also suggests her "weak dominant right hand" would limit the job base.  Indeed, the ALJ did not make any specific findings regarding these impairments and should do so on remand.